ZEFF LAW FIRM, LLC
Gregg L. Zeff, Esquire
Drake P. Bearden, Jr., Esquire
100 Century Parkway, Suite 305
Mt. Laurel, NJ 08054
(t) 856-778-9700
(f) 856-702-6640
gzeff@glzefflaw.com                                    *Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SERGEANT GEORGE E. MARRA<br>817 Witherspoon Way<br>Mullica Hill, NJ 08062 | : <br> : <br> : <br> : | **CIVIL ACTION** |
| *Plaintiff,* | : <br> : <br> : | **No.** |
| v. | : <br> : | |
| TOWNSHIP OF HARRISON<br>Harrison Municipal Building<br>114 Bridgeton Pike<br>Mullica Hill, NJ 08062 | : <br> : <br> : <br> : <br> : | |
| and | : <br> : | |
| MAYOR LOUIS MANZO<br>Township of Harrison<br>Harrison Municipal Building<br>114 Bridgeton Pike<br>Mullica Hill, NJ 08062 | : <br> : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| and | : <br> : | |
| BUSINESS ADMINISTRATOR<br>CAROLE RIECK<br>Township of Harrison<br>Harrison Municipal Building<br>114 Bridgeton Pike<br>Mullica Hill, NJ 08062 | : <br> : <br> : <br> : <br> : <br> : | |
| And | : <br> : <br> : | |

1

DEPUTY MAYOR DENNIS CLOWNEY    :
Township of Harrison           :
Harrison Municipal Building    :
114 Bridgeton Pike             :
Mullica Hill, NJ 08062         :
                               :
and                            :
                               :
COMMITTEEMAN DONALD HEIM       :
Township of Harrison           :
Harrison Municipal Building    :
114 Bridgeton Pike             :
Mullica Hill, NJ 08062         :
                               :
and                            :
                               :
DAVID UNDERCUFFLER             :
Township of Harrison           :
Harrison Municipal Building    :
114 Bridgeton Pike             :
Mullica Hill, NJ 08062         :
                               :
and                            :
                               :
POLICE CHIEF FRANK RODGERS     :
Township of Harrison           :
Harrison Municipal Building    :
114 Bridgeton Pike             :
Mullica Hill, NJ 08062         :
                               :
                   *Defendants.* :

## **INTRODUCTION**

1.     This action seeks injunctive, declaratory and economic relief from illegal conduct

by administrators from the Defendant Harrison Township, Mayor Louis Manzo, business

administrator Carol Rieck, Deputy Mayor Dennis Clowney, Committeeman Donald Heim, and

David Undercuffler ("Defendants").

2

## JURISDICTION

2.      This action is brought pursuant to the First and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3) and the aforementioned statutory and constitutional provisions.

3.      Jurisdiction lies over state law claims based on the principles of supplemental jurisdiction, as codified at 28 U.S.C. § 1367.

4.      The amount in controversy exclusive of interest and costs exceeds the sum of One Hundred Thousand Dollars ($100,000).

## VENUE

5.      All the claims herein arose within the jurisdiction of the United States District Court for the District of New Jersey and involve Defendants who reside within the jurisdictional limits. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391(b) and (c).

## PARTIES

6.      Plaintiff, Sergeant George E. Marra ("Plaintiff") is a Sergeant with the Harrison Township Police Department.

7.      Defendant Township of Harrison ("Harrison") is a municipality with its offices located at the above address.

8.      Defendant Mayor Louis Manzo was the Mayor of Harrison and the chief executive officer of Harrison at all times relevant to this matter.

9.      Defendant Carole Rieck was the business administrator for the Township of Harrison. Defendant Rieck is responsible for the day to-day operation of Harrison Township at all times relevant to this matter.

3

10.     Defendant Deputy Mayor Dennis Clowney was the Deputy Mayor of Harrison Township at all times relevant to this matter.

11.     Defendant Donald Heim was a Committeeman with the Township of Harrison at all times relevant to this matter.

12.     Defendant David Undercuffler was a private consultant hired by Harrison Township to provide consulting services and participate as a member in the decision to select a new chief of police for Harrison at all times relevant to this matter.

13.     Defendant Police Chief Frank Rodgers was the Police Chief of the Harrison Police Department during some of the times relevant to this matter.

## FACTS

14.     On November 30, 1992, Plaintiff began his employment as a patrolman with the Harrison Township Police Department.

15.     On September 7, 1999, the Plaintiff was promoted from the rank of Patrolman to the rank of Sergeant with the Harrison Township Police Department ("Police Department").

16.     Throughout Plaintiff's career, he has received more accommodations and awards than most officers in the Police Department, including Patrolman Thomas Mills.

17.     Throughout his career with the Police Department, the Plaintiff has received more police training than most Harrison Police Officers, including Patrolman Thomas Mills.

18.     Throughout his career with the Police Department, the Plaintiff has performed supervisory duties substantially longer than most Harrison Police Officers, including Patrolman Thomas Mills.

19.     In 2007, Harrison Township Police Officer Christine Kemp filed a lawsuit against Harrison Township captioned Kemp v. Harrison Township, et al.

4

20.     The lawsuit alleged among other things that Harrison Township Police Chief Frank Rodgers discriminated against Kemp because of her gender, and subjected her to sexual harassment and a hostile work environment in violation of the New Jersey Law Against Discrimination ("NJLAD").

21.     In or around December 2007, the Harrison Police Chief Frank Rodgers became aware that the Plaintiff was testifying on behalf of Kemp in the lawsuit. Rodgers approached the Plaintiff and stated that "you know, nobody here would ever do anything to hurt anyone personally or professionally and actually I am the only person that could do that."

22.     On July 15, 2008, Plaintiff was deposed in the Kemp lawsuit and provided testimony that Rodgers would treat Kemp less favorably than similarly situated male employees.

23.     Among other things, Marra testified that, "[Rodgers] said to me, you know, I hope this thing with [Kemp] blows over. He said she is coming up on 40. She doesn't have any kids. She doesn't have a boyfriend. She is pre-menopausal. She is overly emotional and I hope this blows over."

24.     Prior to July 15, 2008, Plaintiff was not disciplined nor was he subjected to any other adverse employment action by the Township against him.

25.     Subsequent to July 15, 2008, Plaintiff's loyalty to the department was questioned and he was treated differently.

26.     In or around December 2008, the Plaintiff was notified that his work rotation would be the complete opposite of the previous year despite assurances in December 2007 that he would remain on the same rotation the following year.

27.     As a result of this scheduling change the Plaintiff was unable to watch his stepdaughter, and his wife often had to change her work schedule to watch her.

5

28.     In or around August 2009 a patrolman assigned to the Plaintiff's shift was removed from his shift and placed on another patrol. Contrary to the customary practice of the department, this patrolman was not replaced and the Plaintiff was left with only himself and one other patrolman.

29.     Eliminating this patrolman created an unsafe environment for the Plaintiff and his single patrolman, and eliminated his ability to use comp time.

30.     After the Plaintiff testified in the Kemp case, when the officers on his shift would eat breakfast and/or lunch Chief Rodgers would instruct the lieutenant to call the Plaintiff and harass him.

31.     No other shifts were questioned when they would eat meals longer than the Plaintiff's shift would. Furthermore, because of situations like this, officers knew that the Plaintiff was being targeted and were less willing to work with him on his shift.

32.     After the Plaintiff testified, Rodgers became cold toward the Plaintiff. When the Plaintiff would pass Rodgers, even if no one else was around, Rodgers would not even acknowledge him. Chief Rodgers did not act like this toward similarly situated officers who did not testify against Rodgers and the Township.

33.     In or around January 2011, an announcement was made that Chief Rodgers was retiring. On February 7, 2011 the Township advised the Department that a process would be established to select the new Chief.

34.     The Township hired Defendant David Undercuffler as a consultant for the hiring process. At the time Undercuffler was hired as a consultant, both Undercuffler and his wife Paula Undercuffler were Harrison employees with a longstanding friendship with Patrolman Mills and his family.

6

35.     Among the rules established for the hiring process was that there would be a committee consisting of Defendant Mayor Manzo, Defendant Deputy Mayor Clowney, Defendant Rieck, Defendant Heim and Defendant Undercuffler who would evaluate and make final decisions regarding the candidates.

36.     The rules also established a four-part test for selecting the new Chief.

37.     Those four parts included: (1) a resume portion, (2) a written test, (3) a take-home essay, and (4) an oral interview. The overall evaluation process was to be based upon a point system based on these four criteria.

38.     Prior to the applications being distributed for Chief, the Township produced a document providing points to each officer currently employed by the Township based on their background and resumes. According to this document, the Plaintiff was awarded more points than Patrolman Mills.

39.     The Plaintiff also finished ahead of Patrolman Mills in the written portion of the evaluation.

40.     After the results of the written exam were published, the resume evaluation points were provided which showed that Patrolman Mills somehow finished ahead of Plaintiff on the resume portion of the evaluation. This despite the fact that the Plaintiff had more experience and a higher rank than Patrolman Mills and despite the fact that the document released previously established that the Plaintiff had a higher score based on his background and resume.

41.     On May 25, 2011 Defendant Mayor Manzo spoke at a Police Benevolent Association meeting regarding the Police Chief selection process. Manzo stated that, "The department must come together. I am tired of lawsuits. If I have to sign one more check for stupid shit, I'm gonna lose my mind."

42.     In the oral interview portions of this process, Plaintiff was asked to demonstrate an example of his integrity.  He cited his testimony against the Township in the Kemp v. Harrison lawsuit as an example of his integrity. On June 12, 2011, the Plaintiff was advised that he tied with Patrolman Mills on the interview portion of the evaluation.

43.     On June 14, 2011, the Plaintiff received a phone call advising him that Patrolman Mills had been hired as the new Chief.

44.     On June 30, 2011 Plaintiff sent a letter to the Township solicitor requesting a meeting to discuss reasonable remedies to the Defendants' above-described wrongful conduct.

45.     In response, on August 12, 2011 counsel for Defendants sent a letter to the Plaintiff stating that the Defendants believe the instant lawsuit is frivolous.

46.     Subsequently, in August of 2011, the Township announced a vacancy for a Captain's position, for which the Plaintiff applied. The position of Captain was given to another officer.

47.     The Defendants' continuing actions against the Plaintiff are in retaliation for the testimony he gave and in violation of state and federal laws.

## COUNT I
## CONCIENTIOUS EMPLOYEE PROTECTION ACT
## N.J.S.A. 34:19-1 et seq.

48.     Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

49.     According to the Conscientious Employee Protection Act (CEPA) it is unlawful in New Jersey for an employer to take an adverse employment action against an employee who testifies before any public body conducting an investigation into unlawful activity by the employer.

8

50.     Plaintiff, among other things, provided truthful testimony in the <u>Kemp</u> lawsuit about unlawful activity of his employer, and has been punished for doing so.

51.     As a result of his testimony against his employer, the Defendants took and continue to take adverse employment actions against the Plaintiff.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

(A)     award Plaintiff injunctive relief, declaratory relief, front pay, back pay, and compensatory damages including but not limited to pain, suffering, past economic loss, future economic loss, loss of life's pleasures, loss of reputation, loss of promotional opportunity, benefits, and other damages;

(B)     award reasonable costs and attorney's fees;

(C)     award punitive damages;

(D)     issue an order declaring the policies, practices and/or customs of Harrison described herein violate Federal and State law;

(F)     grant any other relief that this court deems just and proper under the circumstance.

**COUNT II**
**DUE PROCESS**

52.     Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

53.     The Fourteenth Amendment through 42 USC § 1983 prevents the State from taking away an individual's life, liberty, or property without due process of law.

54.     As a member of the Harrison Police Department, Plaintiff has a property interest in his employment and a right to Due Process for promotional opportunities.

9

55. Plaintiff was denied his Due Process rights when an illegal process was used to determine the Chief of Police and Captain.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

(A)     award Plaintiff injunctive relief, declaratory relief, front pay, back pay, and compensatory damages including but not limited to pain, suffering, past economic loss, future economic loss, loss of life's pleasures, loss of reputation, loss of promotional opportunity, benefits, and other damages;

(B)     award reasonable costs and attorney's fees;

(C)     award punitive damages;

(D)     issue an order declaring the policies, practices and/or customs of Harrison described herein violate Federal and State law;

(F)     grant any other relief that this court deems just and proper under the circumstance.

**COUNT III**
**MARRA V. MANZO, RIECK, CLOWNEY, HEIM AND UNDERCUFFLER**
**FIRST AMENDENT AND FOURTEENTH AMENDMENTS**

56. Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

57. Under the First and 14th Amendments of the United States Constitution, the Plaintiff has the right not to be deprived by a state actor of his right to Freedom of Speech.

58. The offering of truthful testimony is the responsibility of every citizen and there is a First Amendment protection associated with fulfilling that duty.

59. When the Plaintiff testified truthfully he was acting as a citizen bound by the dictates of the courts and rules of evidence.

60. The Defendants have punished and continue to punish the Plaintiff for testifying in violation of 42 U.S.C. § 1983 and the First and 14th amendments.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

(A) award Plaintiff injunctive relief, declaratory relief, front pay, back pay, and compensatory damages including but not limited to pain, suffering, past economic loss, future economic loss, loss of life's pleasures, loss of reputation, loss of promotional opportunity, benefits, and other damages;

(B) award reasonable costs and attorney's fees;

(C) award punitive damages;

(D) issue an order declaring the policies, practices and/or customs of Harrison described herein violate Federal and State law;

(F) grant any other relief that this court deems just and proper under the circumstance.

## COUNT IV
## NEW JERSEY CONSTITUION DUE PROCESS

61. Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

62. Article 1 Paragraph 1 of the New Jersey Constitution establishes a right to due process for all New Jersey citizens.

63. As members of the Harrison Township Police Department Plaintiff has a property interest in his employment as a police officer, and promotional opportunities.

64. Plaintiff was denied his Due Process rights when he was not provided with a fair opportunity for promotion to the rank of Chief and/or Captain.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

(A)     award Plaintiff injunctive relief, declaratory relief, front pay, back pay, and compensatory damages including but not limited to pain, suffering, past economic loss, future economic loss, loss of life's pleasures, loss of reputation, loss of promotional opportunity, benefits, and other damages;

(B)     award reasonable costs and attorney's fees;

(C)     award punitive damages;

(D)     issue an order declaring the policies, practices and/or customs of Harrison described herein violate Federal and State law;

(F)     grant any other relief that this court deems just and proper under the circumstance.


**ZEFF LAW FIRM, LLC**

*s/Gregg L. Zeff*

_____
Gregg L. Zeff, Esquire
Drake P. Bearden, Jr., Esquire

Dated: <u>May 11, 2012</u>