IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                        :
SERGEANT GEORGE E. MARRA,     :       HON. JEROME B. SIMANDLE
                        :
           Plaintiff,   :       Civil No. 12-2863 (JBS/AMD)
                        :
     v.                 :
                        :            OPINION
TOWNSHIP OF HARRISON, et al., :
                        :
           Defendants.  :
_____:
```

APPEARANCES:

Gregg L. Zeff, Esq.
LAW FIRM OF GREGG L. ZEFF
100 Century Parkway
Suite 305
Mt. Laurel, NJ 08054
     -and-
Drake P. Bearden, Jr., Esq.
ZEFF LAW FIRM, LLC
100 Century Parkway
Suite 305
Mt. Laurel, NJ 08054
     Attorneys for Plaintiff

Todd J. Gelfand, Esq.
BARKER SCOTT & GELFAND
The Paintworks Corporate Center
7 Foster Avenue
Suite 201
Gibbsboro, NJ 08026
     Attorney for Defendants

**SIMANDLE**, Chief Judge:

## I.  INTRODUCTION

This matter is before the Court on Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) [Docket Item 6] and Plaintiff Sergeant George Marra's unopposed

motion seeking leave to amend his Complaint pursuant to Fed. R. Civ. P. 15(a)(2) [Docket Item 8]. Plaintiff alleges that he was subject to adverse employment actions and that he was passed over for promotions in retaliation for testifying against the former Harrison Township Police Chief in a discrimination suit brought by a female police officer. The Amended Complaint voluntarily withdraws two counts, adds facts about Plaintiff's testimony and adds language to Count I, brought under the Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19-1 et seq.

For the reasons explained below, the Court will grant the motion to amend in part, and deny in part, and deny the Defendants' motion to dismiss.

## II.  BACKGROUND

The facts of this case are drawn from Plaintiff Marra's proposed Amended Complaint.

Plaintiff is a Sergeant in the Harrison Township Police Department, where he has worked since 1992. [Am. Compl. ¶¶ 14-15.] In 2007, Christine Kemp, a fellow Harrison police officer, filed a civil lawsuit against Harrison Township alleging that Police Chief Frank Rodgers discriminated against her on the basis of gender and subjected her to sexual harassment and a hostile work environment. [Id. ¶¶ 19-20.] Upon learning that Plaintiff intended to testify on Kemp's behalf, Rodgers told Plaintiff: "You know, nobody here would ever do anything to hurt anyone

2

personally or professionally and actually I am the only person that could do that." [Id. ¶ 21.]

Plaintiff was deposed in the lawsuit and testified that Rodgers told him, "I hope this thing with [Kemp] blows over. . . . [S]he is coming up on 40. She doesn't have any kids. She doesn't have a boyfriend. She is pre-menopausal. She is overly emotional and I hope this blows over."  [Id. ¶ 23(a).] Plaintiff also testified that Rodgers (1) assigned Kemp to clerical duties to which male officers were not, (2) would "say to Kemp that she must be blonde under her dark roots," (3) would yell at Kemp in a way he did not at male employees, (4) would "make discriminatory statements about Kemp because she was Polish," and (5) would speak to Kemp in a condescending tone not used with male officers and "would remark that speaking to her was like speaking to one of his daughters." [Id. ¶ 23(b)-(f).]

Plaintiff asserts his loyalty to the department was questioned, and he was treated differently after giving testimony. [Id. ¶ 25.] His work rotation was changed, despite assurances that it would remain the same, and, as a result, Plaintiff was "unable to watch his stepdaughter" and his wife was forced to change her work schedule to care for the daughter. [Id. ¶¶ 26-27.] A patrolman was removed from Plaintiff's shift and not replaced, creating an allegedly "unsafe environment for the Plaintiff" and eliminating Plaintiff's ability to use "comp

3

time." [Id. ¶¶ 28-29.] Plaintiff asserts that Rodgers instructed the lieutenant to call Plaintiff and harass him when he and the other officers were eating meals. [Id. ¶ 30.] As a result of this conduct, Plaintiff asserts that officers were less willing to work with him on his shift. [Id. ¶ 31.]

In 2011, Rodgers announced his retirement, and a committee was established to evaluate job candidates and hire a replacement. [Id. ¶ 33.] Plaintiff applied for the job. Defendants Mayor Louis Manzo, Deputy Mayor Dennis Clowney, business administrator Carole Rieck, Committeeman Donald Heim, and consultant David Undercuffler[1] served on the committee. [Id. ¶ 34.] Candidates were evaluated on the basis of their resume, a written test, an essay and an oral interview. [Id. ¶ 37.] Plaintiff asserts that, initially, one document showed his resume earned more points than that of fellow candidate patrolman Thomas Mills, but ultimately, Mills was awarded more resume points, despite the fact that Plaintiff had more experience and a higher rank than Mills. [Id. ¶¶ 38-40.] During his oral interview, Plaintiff cited his testimony against Rodgers as an example of his integrity. [Id. ¶ 41.] Before the hiring decision was made, Plaintiff asserts that Mayor Manzo stated, at an association meeting, "The department must come together. I am tired of

---

[1] Plaintiff asserts that Undercuffler was a longstanding personal friend of patrolman Thomas Mills, who ultimately was named Police Chief. [Id. ¶ 34.]

lawsuits. If I have to sign one more check for stupid shit, I'm gonna lose my mind." [Id. ¶ 41.] The committee selected Mills as the new Police Chief. [Id. ¶¶ 42-43.]

Plaintiff was passed over for the position of Captain a few months later. [Id. ¶ 46.]

In his original Complaint, Plaintiff asserted four Counts against Defendants: (1) a violation of the Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1, which protects employees who blow the whistle on unlawful activity by their employers; (2) a violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, brought under 42 U.S.C. § 1983; (3) a violation of the First and Fourteenth Amendments to the U.S. Constitution, also brought pursuant to § 1983, for retaliation in response to his testimony; and (4) a violation of Due Process rights under the New Jersey Constitution. [Compl. ¶¶ 48-64.] Plaintiff seeks injunctive relief, declaratory relief, damages, and costs and fees. [Id. ¶ 60.]

Defendants moved to dismiss all counts of the Complaint, under Rule 12(b)(6). [Docket Item 6.] In lieu of opposition, Plaintiff filed the present motion for leave to file an Amended Complaint, pursuant to Rule 15(a)(2). [Docket Item 8.] The Amended Complaint voluntarily withdraws Counts II and IV (the Due

Process claims under the U.S. and New Jersey Constitutions)[2], and adds facts about Plaintiff's deposition and adds key language to the CEPA claim.

Specifically, the Amended Complaint asserts additional facts to which Plaintiff testified against Rodgers, Am. Compl. ¶ 23(b)-(f), described above. The Amended Complaint also adds the following language to Count I (CEPA claim):

> 51. Despite threats from Rodgers and others, the Plaintiff objected to and/or refused to participate in illegal and/or wrongful activity conducted by the Defendants including but not limited to discriminating against another employee and giving false testimony during a deposition.
> 52. As a direct and proximate result of the Plaintiff's objecting to and/or refusing to participate in illegal and/or wrongful activity conducted by the Defendants, the Defendants took and continue to take adverse employment actions against the Plaintiff.

[Am. Compl. ¶¶ 51-52.] Count III of the Amended Complaint (First Amendment claim) is identical to that in the original Complaint, but incorporates the additional facts to which Plaintiff testified against Rodgers. [Compare id. ¶¶ 53-57, with Compl. ¶¶ 56-60.] Defendants filed no opposition to the motion to amend.

## III.  DISCUSSION

This Court has jurisdiction under 28 U.S.C. §§ 1331 & 1343(3), as well as supplemental jurisdiction over the state-law claim under 28 U.S.C. § 1367.

---

[2] Consequently, Defendants' motion to dismiss Counts II and IV will be dismissed as moot, those Counts having been withdrawn.

## A. Standard of review

Under Fed. R. Civ. P. 15(a)(2), a party may amend its pleading with the court's leave, and "[t]he court should freely give leave when justice so requires." However, a district court may deny leave to amend when amendment would be futile. Smith v. Nat'l Collegiate Athletic Ass'n, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999). An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted. Id.; see also Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000). The decision to grant or deny leave to amend is largely within the discretion of the Court. Smith, 139 F.3d at 190.

To survive a motion to dismiss, a complaint must allege, in more than legal boilerplate, those facts about the conduct of each defendant giving rise to liability. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a) and 11(b)(3). These factual allegations must present a plausible basis for relief (i.e., something more than the mere possibility of legal misconduct). See Ashcroft v. Iqbal, 556 US 662, 681 (2009). In its review of a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d

7

Cir. 2008) (quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Iqbal</u>, 556 U.S. at 678.

The Court will consider whether Count I and Count III of the Amended Complaint would survive a motion to dismiss for failure to state a claim to determine if amendment would be futile in this case. Because Defendants have not filed opposition to the motion to amend, the Court will be guided by Defendants' arguments in their motion to dismiss.

**B. Conscientious Employee Protection Act claim (Count I)**

To maintain an action under CEPA, the plaintiff employee must show: (1) the plaintiff reasonably believed the employer's conduct violated the law, (2) the plaintiff performed a whistle-blowing activity as described in N.J. Stat. Ann. § 34:19-3c, (3) the employer took adverse action against the plaintiff, and (4) a causal connection exists between the whistle-blowing and the adverse employment action. <u>Dzwonar v. McDevitt</u>, 828 A.2d 893, 900 (N.J. 2003). Germane to the second element, CEPA provides, in relevant part, that "[a]n employer shall not take any retaliatory action against an employee because the employee . . . [o]bjects to, or refuses to participate in any activity, policy or practice

which the employee reasonably believes: (1) is in violation of a law . . . ; [or] (2) is fraudulent or criminal . . . ." N.J. Stat. Ann. § 34:19-3c.

In their motion to dismiss, Defendants faulted Plaintiff's Complaint for not stating that Plaintiff delivered his whistle-blowing message in one of three manners required by § 34:19-3c. [Def. Mot. to Dismiss at 5-6]. In response, Plaintiff added ¶¶ 51-52 to the Amended Complaint, alleging that "[d]espite threats from Rodgers and others," Plaintiff objected to, or refused to participate in, illegal or wrongful activity, "including but not limited to discriminating against another employee and giving false testimony during a deposition." Plaintiff also inserted language alleging that the adverse employment actions suffered by him were the "direct and proximate result of the Plaintiff's objecting to and/or refusing to participate in illegal and/or wrongful activity conducted by the Defendants."

Plaintiff's primary theory appears to be that Rodgers, and other Defendants, retaliated against Plaintiff because he testified in a deposition against Rodgers. The Amended Complaint sufficiently alleges that Plaintiff believed Rodgers's alleged discrimination against Kemp was illegal, that Plaintiff faced adverse employment actions (changes to his schedule, a reduction in his shift personnel effectively depriving him of the use of comp time, and harassment from the lieutenant, among others), and

that the adverse employment actions were a direct result of Plaintiff's deposition testimony (only after being deposed was Plaintiff "treated differently"). The key inquiry is whether Plaintiff performed a whistle-blowing activity by objecting to, or refusing to participate in, "any activity, policy or practice which the employee reasonably believes: (1) is in violation of a law . . . ; [or] (2) is fraudulent or criminal . . . ." § 34:19-3c.

At this stage of litigation, the Court is willing to view Plaintiff's decision to testify against Rodgers as objecting to the Police Chief's allegedly discriminatory behavior, which Plaintiff reasonably believed was in violation of the law. This appears to satisfy the plain language of § 34:19-3c. Defendants do not oppose Plaintiff's motion to amend and thus have not presented the Court with any cases that indicate this claim could not survive a motion to dismiss. Therefore, the Court will grant Plaintiff's motion to amend to the extent that Plaintiff alleges a claim under CEPA on the ground that he objected to Rodgers's discrimination by testifying on Kemp's behalf.

In addition, Plaintiff's Amended Complaint can be read to assert that Plaintiff refused to give false testimony during his deposition - a separate ground for stating a CEPA claim under § 34:19-3c. The Court is willing, at this stage of the litigation, to view Rodgers's statement to Plaintiff that "I am the only

person" who could "hurt anyone personally or professionally" as, arguably, a threat to encourage Plaintiff from testifying falsely. Thus, Plaintiff states a claim under CEPA against Rodgers on this ground as well.

The Court notes that this second theory supporting a CEPA claim is not archetypal, because in the typical CEPA case the employee objects to illegal conduct by the employer by blowing the whistle on that very conduct. Here, Plaintiff alleges that the content of his deposition concerned one kind of illegal activity (discrimination based on gender) and that he refused to participate in another illegal or fraudulent activity (giving false testimony). Because Defendants do not oppose the motion to amend, and, thus, neither side has briefed the issue of whether such a theory properly constitutes a claim under CEPA, the Court will grant the motion to amend on this ground and permit both parties to argue the point in later proceedings, if appropriate.

At the same time, however, Plaintiff does not assert any facts that show that any of the named Defendants other than Rodgers suggested to Plaintiff, or pressured him, to give false testimony and he refused. Indeed, the other named Defendants do not enter Plaintiff's narrative of the case until February 2011 at the earliest, and Plaintiff's deposition testimony occurred on July 15, 2008. [Am. Compl. ¶¶ 22, 33.] Therefore, Plaintiff fails to state a claim under CEPA insofar as he asserts that any named

Defendant, other than Rodgers, suggested to Plaintiff, or pressured him, to give false deposition testimony and that he refused to do so, as a way to satisfy § 34:19-3c.

Plaintiff also appears to assert that the retaliation against him stemmed from his "refus[al] . . . to participate in . . . discriminati[on] against another employee." [Am. Compl. ¶ 51.] But Plaintiff has not asserted that he had an opportunity or the authority to discriminate against Kemp or any other employee and refused to do so, or that any of the named Defendants, including Rodgers, ever encouraged him to discriminate against any employees and he refused. Nor has Plaintiff asserted facts to show that his refusal to discriminate against other employees caused the adverse employment actions; rather, all of the alleged retaliatory conduct is related to Plaintiff's deposition testimony. As previously discussed, Plaintiff pegs his deposition date as the moment at which his work environment soured. Thus, insofar as Plaintiff seeks relief under CEPA for refusing to participate in discrimination against other employees, his motion to amend will be denied as futile. Plaintiff has not pled any facts to support that theory.

Defendants present an alternative argument to dismiss Count I: that Plaintiff did not engage in whistle-blowing activity because he was performing a duty that was part of his job description - "to provide[] 'truthful and accurate descriptions'

12

of potentially illegal conduct" - and conduct performed pursuant
to an employee's job cannot be the basis for a CEPA claim. [Def.
Mot. to Dismiss at 13-14.] To support this proposition,
Defendants cite one non-precedential, unpublished opinion from
the New Jersey Appellate Division, Richardson v. Deborah Heart &
Lung Ctr., 2010 N.J. Super. Unpub. LEXIS 1795 (N.J. Super. Ct.
App. Div. July 28, 2010), which is not binding on this, or any
other, court. In Richardson, the plaintiff was an assistant
manager in a laboratory, and her duties included assuring that
all of the lab's billing information was accurate. Richardson,
2010 N.J. Super. Unpub. LEXIS 1795 at *2-*3, *19. The trial court
"expressed difficulty identifying . . . 'what it was exactly that
the plaintiff was alleging was the protected activity'" for which
she was retaliated against, but the activity appeared to involve
correcting and reporting inaccuracies in the laboratory's
database. Id. at *9. The trial court granted summary judgment for
the defendant, reasoning that "simply because [she] was in some
way involved in activities that appear to be compliance issues"
does not "in and of itself establish[] that she was engaged in
protected activity." Id. The court further noted that the
plaintiff did not allege that she "was being advised to do things
that were illegal or violated public policy" or that the
procedures she was advised to pursue violated any law, rules,
regulations or public policy. Id. at *10. The Appellate Division

13

affirmed. Id. at *20.

Richardson is inapposite, because the Plaintiff here is not being punished for doing his job, as the plaintiff in Richardson, effectively, was arguing. The Court disagrees with Defendants that simply because Plaintiff gave truthful deposition testimony he did so in the course of his employment. The mandate to testify truthfully in depositions applies to all, and Defendants' argument, taken to its logical conclusion, suggests that a police officer could never state a claim for retaliation under CEPA if he or she testified against his or her employer, or if he or she disclosed potentially illegal activity to prosecutors, because that conduct is part of a police officer's job. That cannot be the case. See, e.g., McCullough v. City of Atlantic City, 137 F. Supp. 2d 557, 560, 574 (D.N.J. 2001) (describing a police officer's testimony in racial discrimination lawsuits against his employer, the Atlantic City Police Department, as "clearly 'whistle-blowing' activit[y] under CEPA"); Hancock v. Borough of Oaklyn, 790 A.2d 186, 188-89 (N.J. Super. Ct. App. Div. 2002) (entertaining a CEPA action brought by a police officer who disclosed potentially illegal activity to the Mayor and the State Attorney General's Office). Here, Plaintiff's testimony was not related to any police work. A police officer's official duties do not include testifying in civil discrimination lawsuits. The Court agrees with McCullough that a police officer testifying in

14

a discrimination lawsuit against his employer police department engages in whistle-blowing activity. <u>See</u> <u>McCullough</u>, 137 F. Supp. 2d at 574. Defendants' motion to dismiss Count I on the ground that giving deposition testimony was part of Plaintiff's job description will be denied.

In sum, the Court will grant Plaintiff's motion to amend Count I to the extent that Plaintiff asserts a CEPA claim on the grounds that he objected to Rodgers's discrimination by giving deposition testimony. In addition, the Court will grant the motion to amend Count I to the extent that Plaintiff alleges a CEPA violation for retaliation after he refused to testify falsely about Rodgers's discrimination. However, this latter ground states a valid claim only against Rodgers, and not against any of the other individually named Defendants. The motion to amend will be denied insofar as Plaintiff asserts a CEPA violation because he was subject to retaliation as a result of failing to discriminate against other employees; Plaintiff failed to assert any facts to support that claim. Defendants' motion to dismiss Count I will be denied as moot, the Plaintiff having cured Defendants' objections in his Amended Complaint, or for the reason stated above, concerning Defendants' argument about conduct within the scope of Plaintiff's employment.

## C. First Amendment claim (Count III)

To state a First Amendment retaliation claim, a plaintiff

must allege (1) that the activity in question is protected by the
First Amendment and (2) that the protected activity was a
substantial factor in the alleged retaliatory action. Hill v.
Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006) (citing
Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005)). A
public employee's statement is protected when (1) the employee
speaks as a citizen, (2) the statement involves a matter of
public concern, and (3) the government employer does not have "an
adequate justification for treating the employee differently from
any other member of the general public" as a result of the
statement he or she makes. Id. at 241-42 (quoting Garcetti v.
Ceballos, 547 U.S. 410, 418 (2006)). A public employee does not
speak "as a citizen" when he or she speaks "pursuant to [his or
her] official duties." Garcetti, 547 U.S. at 421. Whether a
statement involves a matter of public concern "must be determined
by the content, form, and context of a given statement, as
revealed by the whole record." Rankin v. McPherson, 483 U.S. 378,
385 (1987); see also Hill, 455 F.3d. at 242 (quoting Rankin).

Plaintiff's Count III alleges that Defendants Manzo, Rieck,
Clowney, Heim and Undercuffler "have punished and continue to
punish Plaintiff for testifying" against Rodgers in violation of
the First Amendment, made applicable to the states via the
Fourteenth Amendment. [Am. Compl. ¶ 57.] Plaintiff asserts that
the First Amendment protects his ability and duty to offer

16

truthful testimony. [Id. ¶ 55.] Aside from the facts regarding the content of Plaintiff's deposition testimony, incorporated into the Amended Complaint in ¶ 53, Count III of the Amended Complaint is identical to that of the original Complaint.

Defendants argue, in their motion to dismiss, that Count III fails to state a claim for two reasons: (1) Plaintiff's deposition testimony "was made as part of Plaintiff's official duties as police officer and therefore is not protected activity under the First Amendment" and (2) Plaintiff's speech "regard[s] a purely private, internal personnel dispute, rather than an issue of public concern." [Def. Mot. to Dismiss at 18-19.]

### i. Speech made pursuant to official duties

The Court has already explained that Plaintiff's deposition testimony was not offered as part of his official duties as a Sergeant; however, on this point, Defendants cite Garcetti for additional support under First Amendment doctrine. In that case, Respondent Ceballos was a calendar deputy in the Los Angeles County District Attorney's Office, who exercised some supervisory authority over other lawyers and, among other things, prepared memoranda to his superiors pursuant to his duties as a prosecutor. Garcetti, 547 U.S. at 413, 421. A defense attorney requested that Ceballos review an affidavit that had been critical to obtaining a search warrant in a pending criminal case. Id. at 413-14. Such a request was not unusual. Id. at 414.

17

Ceballos investigated the case, found "serious misrepresentations" in the affidavit and relayed those concerns to his supervisors, first orally, then in a written memorandum. Id. Although Ceballos recommended dismissing the case, his supervisors disagreed, and later Ceballos was called to testify on behalf of the criminal defendant about flaws in the affidavit. Id. at 414-15. After his testimony, Ceballos was subject to alleged retaliatory employment actions. Id. at 415. In ruling that the First Amendment did not protect Ceballos's speech, the Supreme Court found "[t]he controlling factor" to be that

> his expressions were made pursuant to his duties as a calendar deputy. See Brief for Respondent 4 ("Ceballos does not dispute that he prepared the memorandum 'pursuant to his duties as a prosecutor'"). That consideration - the fact that Ceballos spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case - distinguishes Ceballos' case from those in which the First Amendment provides protection against discipline.

Id. at 421.

While Ceballos's expressions were made pursuant to his duties as a prosecutor, here Plaintiff's deposition testimony was made pursuant to his role as witness to Rodgers's allegedly discriminatory conduct, not Plaintiff's role as a police officer. Ceballos's job was to report and recommend findings to his superiors; here, by contrast, Plaintiff's deposition did not relate at all to Plaintiff's police work. Plaintiff was not fulfilling a responsibility to his police department under the

18

terms of his employment by testifying on Kemp's behalf. If Plaintiff felt ethically compelled to testify against Rodgers, he was fulfilling a responsibility to the department only in a larger, public-interest sense: to report and expose potentially illegal conduct by the Police Chief. Plaintiff was obliged to testify against Rodgers no more than any citizen would, who happened to witness discriminatory conduct. Therefore, the Court will deny Defendants' motion to dismiss Count III on this ground.

**ii. Speech constituting a matter of public concern**

Next, Defendants argue that Plaintiff's speech was purely private, an internal personnel dispute, rather than an issue of public concern, and therefore outside the protection of the First Amendment. [Def. Mot. to Dismiss at 19.] Defendants argue that Plaintiff "was merely addressing a personal grievance of his and/or Officer Kemp, rather than speaking on a matter of public concern." [Def. Mot. to Dismiss at 20-21.] Defendants assert that speech airing personal grievances is not considered a matter of public concern and thus is not protected by the First Amendment. [Id. at 20.]

There is no bright-line rule to determine whether a statement is a matter of public concern. Rather, the character of speech is to be determined by the "content, form, and context of a given statement, as revealed by the whole record." Azzaro v. Cnty. of Allegheny, 110 F.3d 968, 976 (en banc) (3d Cir. 1997)

(quoting Connick v. Myers, 461 U.S. 138, 147-48 (1983)). The
speaker's motivation in making a statement is relevant to the
inquiry but is only one factor to be considered and is not
necessarily controlling in assessing the character of speech.
Zamboni v. Stamler, 847 F.2d 73, 78 (3d Cir. 1988); see also
Kadetsky v. Egg Harbor Twp. Bd. of Educ., 164 F. Supp. 2d 425,
434 (D.N.J. 2001) ("the speaker's motivation is relevant to the
extent that it indicates whether the speaker is speaking as 'a
citizen upon matters of public concern' or as a volunteer 'upon
matters only of personal interest'").

Still, some patterns have emerged in case law. The Third
Circuit has consistently held that "speech disclosing public
officials' misfeasance is protected while speech intended to air
personal grievances is not." Cooper v. Cape May Cnty. Bd. of Soc.
Servs., 175 F. Supp. 2d 732, 744 (D.N.J. 2001) (quoting Swineford
v. Snyder Cnty., 15 F.3d 1258, 1270 (3d Cir. 1994)). In cases
that find plaintiffs to be airing mere personal grievances, the
plaintiff employees generally are concerned primarily with their
own employment situation and often speak out against their
employers concerning alleged wrongdoing directed at themselves.
See Cooper, 175 F. Supp. 2d at 745 (holding that an employee, who
had a well-documented history of conflict with his supervisor,
complained to his union and wrote to a superior about his
supervisor and "was motivated at all times by concern for his own

20

personal employment situation, rather than by a desire to ensure formal adherence to a statutory employment scheme or to expose wrongdoing on the part of his supervisors"); Kadetsky, 164 F. Supp. 2d at 435 (holding that an public school band director, who alleged that his employers set out to create a false record of poor work performance in order to deny him tenure, was "motivated at all times by concern for his personal employment, rather than by a desire to expose errant school policies or malfeasance on the part of his superiors for the betterment of the public"); Saia v. Haddonfield Area Sch. Dist., 2007 U.S. Dist. LEXIS 67018, at *22 (D.N.J. Sept. 10, 2007) (holding that a music teacher, who "was motivated by a desire to dispose of" a co-worker with whom he had a personal conflict, whose statements were not made in a public forum and had only minor administrative ramifications, did not speak on matters constituting public concern).

In this case, the content, form and context of Plaintiff's speech indicates that the deposition was a matter of public concern. The content of the deposition was potential gender discrimination by the Police Chief, and bringing to light potentially illegal conduct by a high-ranking public official is a matter of public concern. See Connick, 461 U.S. at 148 (suggesting that a plaintiff who "bring[s] to light actual or potential wrongdoing or breach of public trust" speaks on a matter of public concern); Azzaro, 110 F.3d at 978 (holding that

21

gender discrimination, "when practiced by those exercising authority in the name of a public official [an executive assistant to the County Commissioner], is as much a matter of public concern as racial discrimination practiced under similar circumstances" and speech bringing to light "actual wrongdoing on the part of one exercising public authority" is relevant to the public); Rode v. Dellarciprete, 845 F.2d 1195, 1202 (3d. Cir. 1988) (holding that a civilian employee of the Pennsylvania State Police spoke on a matter of public concern when she testified about racial discrimination within the State Police in a civil rights trial and later spoke to a news reporter).

Next, the form of the speech was a deposition, part of a judicial proceeding, not a private conversation or letter or internal complaint. This favors finding the speech was a matter of public concern, because the deposition would potentially lead to testimony in open court. See Sanguigni v. Pittsburgh Bd. of Pub. Educ., 968 F.2d 393, 399 (3d Cir. 1992) (suggesting that speech made in judicial or administrative proceedings weighs in favor of finding speech a matter of public concern, citing Zamboni); Saia, 2007 U.S. Dist. LEXIS 67018, at *21 (noting this observation in Sanguigni).

Finally, the context of Plaintiff's deposition - in support of a discrimination claim made by a third party against a Police Chief - distinguishes his speech from that of other speakers who

22

were airing personal grievances against their supervisors. Plaintiff was not a victim of his employer's alleged discrimination. He did not speak out of a motivation to preserve or regain his own employment status, as the speakers did in Cooper, Kadetsky, and Saia. Plaintiff does not assert, nor do Defendants allege, that Plaintiff had an ongoing conflict with Rodgers or that Plaintiff had a personal vendetta against Rodgers motivating his speech. Plaintiff appears to have had little to gain by offering deposition testimony, aside from contributing to the public good of exposing potentially discriminatory behavior by the Police Chief. Although it does not appear that Kemp's lawsuit alleged a policy or custom of discrimination within the police department, which clearly would be a matter of public concern, the Court finds that reporting or testifying to an instance of this kind of wrongdoing is relevant in evaluating the performance of a public office or official. See Azzaro, 110 F.3d at 978 (discussing the Supreme Court's suggestion that bringing to light "actual or potential wrongdoing or breach of public trust . . . would be relevant in evaluating the performance of a public office or official," citing Connick, 461 U.S. at 148).

    Viewing the Amended Complaint as a whole, the content, form and context of this deposition indicates Plaintiff spoke on a matter of public concern, and therefore the First Amendment protects this speech. Plaintiff has sufficiently pled that his

23

testimony was a substantial factor in the alleged retaliatory action. The Amended Complaint presents a plausible First Amendment violation, under 42 U.S.C. § 1983, and Defendants' motion to dismiss will be denied. As Defendants do not oppose Plaintiff's motion to amend Count III, Plaintiff's motion will be granted.

**IV.  CONCLUSION**

The Court will grant Plaintiff's motion to amend Count I to the extent that Plaintiff claims he objected to Rodgers's discrimination by testifying about that discrimination and to the extent Plaintiff refused to testify falsely about Rodgers's discrimination. However, the latter claim may only be asserted against Rodgers, and the motion to amend will be denied to the extent Plaintiff asserts that claim on the latter ground against any other individually named Defendants. The motion to amend will be denied insofar as Plaintiff asserts he was subject to retaliation as a result of failure to discriminate against other employees. Plaintiff's motion to amend Count III will be granted. Defendants' motion to dismiss Counts I & III will be denied, and the motion to dismiss Counts II & IV will be denied as moot. The accompanying Order will be entered.


**December 18, 2012**                    **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         Chief U.S. District Judge

24